Glen M. Diehl
DIEHL LAW LLC
P.O. Box 4206
Warren, NJ 07059
Attorney for Future Sanitation, Inc. and Bryan Aloia

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FUTURE SANITATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> EVERGREEN NATIONAL INDEMNITY COMPANY and MARTIN STERNBERG, <br><br> Defendants. | Civil Action No. <br><br> 3:17-CV-03471-MAS-TJB <br><br> **SUPPLEMENTAL DECLARATION OF BRYAN ALOIA** |
| EVERGREEN NATIONAL INDEMNITY COMPANY, <br><br> Defendant/Counterclaimant, <br><br> v. <br><br> FUTURE SANITATION, INC. and BRYAN ALOIA, <br><br> Counterclaim Defendants. | |

I, Bryan Aloia, submit this supplemental declaration in accordance with 28 U.S.C. 1746:

1. I am an adult. I am and was at all relevant times, the owner and manager of Future Sanitation, Inc. I make the statements herein based on personal knowledge. This

declaration is made in support of Future's opposition to defendant Martin Sternberg's motion for summary judgment.

2. On or about August 29, 2015, I attended a meeting with my attorney, my accountant and two creditors of Future, Joe Desaye and Martin Sternberg, one of the topics discussed was the liquidation value of Future's assets. At the meeting, Desaye and Sternberg both stated that the minimum liquidated value of Future assets was between $6-6.5 Million.

3. I received a summary of the meeting from Joe Desaye by email. A copy of that summary is attached as Exhibit 1.

4. From 2011 to 2015, I was trying to expand Future's business in municipal garbage work. Future obtained bonding from Evergreen from 2011 to 2015 to enable it to do its municipal work. *Id.* Once Evergreen bonded a five year contract, Future was relying on Evergreen's promises, in its consents of surety, to provide bonding for the length of the contract. Future capitalized its operations based on the work that it had, including roll off work and municipal contract work. Future's work required a great deal of equipment, including nearly 100 trucks. A copy of a list of trucks that Future owned throughout 2015 is attached as Exhibit 3. In view of the large amount of equipment needed for Future's operations, Future's capitalization costs were high.

5. In late 2015, Future was investigating the sale of its assets to third parties. I conducted this investigation independently from Martin Sternberg, and did not involve him in any discussions with third parties. For example, on December 1, 2015, Gold Metal confirmed in a letter to Future that it was interested in acquiring all the assets of Future. A copy of Gold Metal's letter is attached as Exhibit 6. I did not hear back from Gold Metal about its December 1, 2015

letter. At the time, I did not know why that was. I tried to call Gold Metal to inquire but received no response from them.

6. When Evergreen pulled the Little Ferry and Manalapan bonds in early 2016, the situation at Future changed dramatically. Before that, Future was operation. Exhibit 9 is a 2015 profit and loss statement for Future that I prepared. It shows Future having revenues in excess of $11 Million and Future operating with a small cash flow. But after Evergreen pulled Future's bonding, employees started leaving. Revenues dropped immediately. Future started operating in survival mode. *Id.* Future's 2016 Profit/Loss statement is attached as Exhibit 10. It shows a big drop in revenue for Future starting in February 2016, just after Evergreen started pulling the bonds.

7. This started a downward spiral for Future. In September 2016, Future surrendered its trucks to its lender. Then in December 2016, Future ceased operations.

8. Following Evergreen's pulling of Future's bonds, Future sold some trucks but any proceeds from the trucks were turned over to Future's lender, Commercial Credit, to reduce the debt.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 15, 2018.

*Bryan Aloia*