**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

FUTURE SANITATION, INC.,

        Plaintiff,

        v.

EVERGREEN NATIONAL INDEMNITY
COMPANY, et al.,

        Defendants.

Civil Action No. 17-3471 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon four motions: (1) Defendant Evergreen National Indemnity Company's ("Evergreen Indemnity") Motion for Partial Summary Judgment ("Evergreen Indemnity's First Motion") (ECF No. 43); (2) Defendant Evergreen Indemnity's Motion for Partial Summary Judgment (as to the Issues of Proximate Cause and Damages) or in the Alternative to Preclude Expert Opinion Testimony ("Evergreen Indemnity's Second Motion") (ECF No. 47); (3) Plaintiff Future Sanitation Inc.'s ("Future Sanitation") Motion for Partial Summary Judgment ("Future Sanitation's Motion") (ECF No. 46); and (4) Defendant–Counterclaimant Martin Sternberg's Motion for Summary Judgment ("Sternberg's Motion") (ECF No. 48).

The Court has carefully considered the arguments and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Evergreen

Indemnity's First Motion is granted. Evergreen Indemnity's Second Motion is denied as moot. Future Sanitation's Motion is denied. And Sternberg's Motion is granted.

## I.    BACKGROUND

Plaintiff Future Sanitation formerly operated as a garbage collection and disposal company and is wholly owned by its president Bryan Aloia. A significant part of Future Sanitation's business derives from contracts with several municipalities to collect and dispose of garbage. Municipal contracts are open to public bidding, and to submit a bid, the company seeking the municipal contract must submit a "consent to surety" letter. A consent to surety letter is an affirmation by a bonding company that it will bond (i.e., secure the bidder's performance of) the contract if the contract is awarded to the bidder. Defendant Evergreen Indemnity is an indemnity company that bonds municipal contracts. It provided Future Sanitation with bonds for each of the five multi-year municipal contracts that are at issue here. Martin Sternberg is an individual with extensive experience in solid waste collection and—at times during the events of this case—a debtholder of Future Sanitation. He agreed to indemnify Evergreen Indemnity for bonds issued to secure Future Sanitation's performance of the contracts.

The five contracts here were all multi-year contracts. Evergreen Indemnity renewed its one-year bonds for each contract up to and until the renewed bonds expired in 2015. Evergreen Indemnity thereafter did not renew the bonds. Future Sanitation tried to find another company to bond the contracts but failed and lost each contract.

Future Sanitation contends Evergreen Indemnity was obligated to provide bonds through the life of each contract. Evergreen Indemnity seeks summary judgment, contending there was no such obligation. Future Sanitation also alleges that Evergreen Indemnity conspired with Sternberg to help Sternberg take over the company. Evergreen Indemnity seeks summary judgment on claims related to those allegations, averring they lack legal or evidentiary support. Sternberg also seeks

2

summary judgment on those claims as well as on his counterclaims seeking recovery on two unfulfilled promissory notes issued to Future Sanitation.

## A. Undisputed Facts

### 1. Future Sanitation's Municipal Contracts

Bryan Aloia is the sole shareholder and president of Future Sanitation. (Sternberg's Statement of Undisputed Facts ("SSUF") ¶ 4, ECF No. 48-2; Future Sanitation's Statement in Resp. to SSUF ("RSSUF") ¶ 4, ECF No. 49-1.) Future Sanitation is a New Jersey corporation that formerly operated throughout New Jersey in the solid waste collection and disposal business. (Am. Compl. ¶ 5, ECF No. 8; Evergreen Indemnity's Answer ¶ 5, ECF No. 13.) A significant part of Future Sanitation's business derives from municipal solid waste collection contracts with numerous New Jersey municipalities. (Am. Compl. ¶ 6.)

Pursuant to New Jersey's Uniform Bid Specifications ("Specifications"), municipalities are required to advertise solid waste collection contracts and allow providers, like Future Sanitation, to publicly bid on the contracts. N.J. Stat. Ann. § 48:13A-7.22; N.J. Admin. Code § 7:26H-6.4. Bidders are required to submit "bid proposals" that conform to the Specifications. N.J. Admin. Code § 7:26H-6.5(a). The Specifications require bidders to submit "[a] consent of surety stating that [a] surety company will provide the bidder with a performance bond if the bidder is awarded the contract." *Id.* § 7:26H-6.5(d)(3), (6).

According to Evergreen Indemnity and Future Sanitation, in 2010, Martin Sternberg, someone with fifty years of experience in solid waste collection, introduced Evergreen Indemnity

and Future Sanitation.[1] On March 21, 2011, Future Sanitation, as "Principal," and Aloia and Sternberg, as "Indemnitors," signed a General Indemnity Agreement in favor of Evergreen Indemnity, as "Surety." (Evergreen Indemnity's First Statement of Undisputed Facts ("EFSUF") ¶ 6, ECF No. 43-11; Future Sanitation's Resp. to EFSUF ("REFSUF") ¶ 6, ECF No. 46-4.) The purpose of the General Indemnity Agreement was to "indemnify[] [Evergreen Indemnity] in connection with and as part of the consideration for any Bond . . . which [it] from time to time may [i]ssue . . . ." (General Indemnity Agreement 1, Kent Decl. Ex. A, at 21, ECF No. 43-3.) Under Section V, "GENERAL POWERS OF THE SURETY," subsection A. provides:

> [Aloia and Sternberg] hereby authorize and empower [Evergreen Indemnity], at its option and in its sole discretion . . . to [] Decline to Issue any Bond, even when such Bond is required by the terms of a bid for which [Evergreen Indemnity] executed a Bid Bond or by the terms of a contract for which [Evergreen Indemnity] executed a Final Bond; and, where [Evergreen Indemnity] executes a Bond which by its terms or by operation of law converts from a Bid Bond into a Payment and/or Performance Bond upon the Obligee's acceptance of the bid bonded by [Evergreen Indemnity], [Evergreen Indemnity] may in its sole discretion cancel the Bond after the Obligee's acceptance of the bid . . . .

(*Id.* § V.A., Kent Decl. Ex. A, at 22.)

Section VIII, "TERMINATION," allowed Sternberg or Aloia to "terminate his liability under this Agreement with respect to future Bonds executed for [Future Sanitation] . . . by sending written notice via certified mail or registered mail to [Evergreen Indemnity's] home office indicating [his] desire to terminate . . . ." (*Id.* § VIII.A., Kent Decl. Ex. A, at 23.) Section VII.D.

---

[1] The parties dispute Sternberg's role. While Evergreen Indemnity and Future agree Sternberg introduced them, Sternberg denies that he introduced them and denies that he had businesses ties with numerous waste removal businesses in New Jersey. (Am. Compl. ¶¶ 8, 10; Evergreen Indemnity's Answer ¶¶ 8, 10; Sternberg's Answer ¶¶ 8, 10, ECF No. 17.) Sternberg "admits only that he has almost fifty years of experience in the operation of solid waste collection, transfer, and transportation companies." (Sternberg's Answer ¶ 8.)

adds that any provision of the agreement held to be void or unenforceable by any court will "be considered deleted in that court's jurisdiction (but not in other jurisdictions)." (*Id.* § VIII.D., Kent Decl. Ex. A, at 23.)

Between 2011 and 2015, Evergreen Indemnity issued several one-year annual performance bonds to various municipalities, securing Future Sanitation's obligation to perform its waste collection contracts with those municipalities. (EFSUF ¶ 12; REFSUF ¶ 12.) The bonds stated in part:

> 4. The bond may be extended for additional terms at the option of [Evergreen Indemnity], by Continuation Certificate executed by [Evergreen Indemnity].
>
> 5. Neither non-renewal by [Evergreen Indemnity], nor failure, nor inability of [Future Sanitation] to file a replacement bond shall constitute loss to the [municipality] recoverable under this bond.

(EFSUF ¶ 18; REFSUF ¶ 18.) Before issuing a bond or bond renewal, Evergreen Indemnity made it a practice of confirming Sternberg's approval. (EFSUF ¶ 12; REFSUF ¶ 12.) Occasionally, Sternberg would not support Future Sanitation's request to issue a bond. (EFSUF ¶ 14; REFSUF ¶ 14.)

From November 2011 to August 2013, Future Sanitation won five-year contracts with the New Jersey municipalities of Little Ferry, Manalapan, Bloomfield, Moonachie, and Rochelle Park. (Future Sanitation's Statement of Undisputed Facts ("FSUF") ¶¶ 5, 14, 23, 32, 42, ECF No. 46-4; Evergreen Indemnity's Statement in Resp. to FSUF ("RFSUF") ¶¶ 5, 14, 23, 32, 42, ECF No. 50-2.) In connection with each bid, Evergreen Indemnity provided the bid bond and consent to surety. (FSUF ¶¶ 3–4, 12, 21, 30, 40; RFSUF ¶¶ 3–4, 12, 21, 30, 40.) Except for the bond provided for Future Sanitation's contract with Bloomfield, (*see* Diehl Decl. Ex. 11, ECF No. 46-17), the consents to surety were simple one-page letters affirming that Evergreen Indemnity "will provide the required Bond or Bonds," (*see, e.g.,* Diehl Decl. Ex. 31, ECF No. 46-37).

5

In August 2014, Sternberg presented a Stock Purchase Agreement to Aloia, proposing to purchase majority ownership of Future Sanitation. (Am. Compl. ¶¶ 30–31; Sternberg's Answer to Am. Compl. ¶ 31, ECF No. 17; Diehl Decl. Ex. 5, at 2, ECF No. 46-11.) The agreement was never executed. (Am. Compl. ¶ 32; Sternberg's Answer to Am. Compl. ¶ 32.) Through the bulk of 2015, Evergreen Indemnity provided renewed bonds for each contract. (FSUF ¶¶ 7, 16, 25, 35, 46; RFSUF ¶¶ 7, 16, 25, 35, 46.) In early 2016, Sternberg told Evergreen Indemnity not to issue any further bond renewals for Future Sanitation. (EFSUF ¶ 33; Future Sanitation's Resp. to Evergreen Indemnity's Second Statement of Undisputed Facts ¶ 43, ECF No. 52.) Thereafter, Evergreen Indemnity did not renew its bonds on Future Sanitation's municipal contracts. (FSUF ¶¶ 8, 17, 26, 36, 47; RFSUF ¶¶ 8, 17, 26, 36, 47.) Future Sanitation worked with a broker to try and obtain bonding from other surety companies, but was unsuccessful. (EFSUF ¶¶ 34, 36; REFSUF ¶¶ 34, 36; *see also* Kent Decl. Ex. D, at Ex. A1, ECF No. 43-5; Kent Decl. Ex. N, at Ex. 2–8, ECF No. 43-9.) Future Sanitation alleges that Evergreen Indemnity's failure to provide the performance bonds caused it to lose the five contracts, thereby destroying the business. (Am. Compl. ¶¶ 66, 69–75, 87; Br. Future Sanitation's Mot. 21, ECF No. 46-1.)

### 2.    Sternberg's Promissory Notes

On October 4, 2014, Aloia, on behalf of Future Sanitation, entered into a promissory note ("First Note") whereby Future Sanitation agreed to pay Sternberg $306,548 plus 15% interest per year. (SSUF ¶¶ 2–4; RSSUF ¶¶ 2–4.) The First Note specified that failure to make a payment under the Note within sixty days of the payment coming due, or cessation of Future Sanitation's business operations, would trigger default. (SSUF ¶ 6; RSSUF ¶ 6.) In the event of default, the Note stated that the unpaid balance of the principal and all accrued unpaid interest would become immediately due and payable. (SSUF ¶ 5; RSSUF ¶ 5.) On the First Note, Aloia executed a personal guaranty stating:

> The undersigned, the owner of 100% of the issued and outstanding stock of [Future Sanitation], hereby guaranties [sic] the full, prompt and unconditional payment of all present and future obligations of [Future Sanitation] to [Sternberg], including without limitation, all amounts owed to [Sternberg] by [Future Sanitation] under this Note.

(SSUF ¶ 7; RSSUF ¶ 7.)

In April 2015, Future Sanitation executed a second promissory note ("Second Note") in favor of Sternberg in the principal amount of $800,000. (SSUF ¶ 8; RSSUF ¶ 8.) The Second Note required periodic installment payments of $1,000, (SSUF ¶¶ 9, 14; RSSUF ¶¶ 9, 14), and accrued interest at 12% per year, (SSUF ¶ 12; RSSUF ¶ 12). Default under the Second Note could be triggered by: (1) a failure to make a payment after notice that such payment is past due, (2) a failure to maintain in good standing the solid waste license or certificate of public convenience and necessity issued by the New Jersey Department of Environmental Protection ("DEP"), or (3) a suspension or revocation of the solid waste license or certificate of public convenience and necessity. (SSUF ¶ 19; RSSUF ¶ 19.) The Second Note further provided that an additional 2% interest per year would accrue after default. (SSUF ¶ 20; RSSUF ¶ 20.) The Note also provided "If this Note shall be collected by legal proceedings or through any court . . . [Future Sanitation] agrees to pay all reasonable attorney's fees and court costs incurred by Lender." (SSUF ¶ 22; RSSUF ¶ 22.)

A letter from Future Sanitation's attorney to the DEP dated September 23, 2015, notes Sternberg as a "Debt Holder" and that Future Sanitation owed him $752,249. (SSUF ¶¶ 24–25; RSSUF ¶¶ 24–25.) The Note matured on May 1, 2018, making the unpaid principal and all accrued interest due.[2] (SSUF ¶¶ 9, 31; RSSUF ¶¶ 9, 31.)

---

[2] It appears Future Sanitation and Aloia do not dispute that the $752,249 is outstanding, but they believe the Note is unenforceable. (SSUF ¶¶ 32–33; RSSUF ¶¶ 32–33.)

## B.     Disputed Facts

Evergreen Indemnity contends that Future Sanitation lacked the creditworthiness and financial wherewithal to qualify for bonding, and Sternberg's agreement to indemnify Evergreen Indemnity provided it with sufficient security to agree to bond Future Sanitation's contracts. (Br. Evergreen Indemnity's First Mot. 4.) Evergreen Indemnity asserts that Aloia, and consequently Future Sanitation, were aware of Sternberg's role and that it would not renew its bonds without Sternberg's approval. (Evergreen Indemnity's First Reply and Opp'n 5, ECF No. 50.) According to Evergreen Indemnity, in late 2015, Sternberg informed Aloia that he would no longer approve Future Sanitation's bonds. (Br. Evergreen Indemnity's First Mot. 13.) Following that meeting, Evergreen Indemnity asserts, Future Sanitation contacted a bond broker and sought to obtain new bonding, aware that Evergreen Indemnity would likely not provide the bonds without Sternberg's indemnification. (*Id.* at 13–15.) Evergreen Indemnity states that Future Sanitation was unsuccessful in its search for new bonding because of its poor financial condition. (*Id.* at 15.)

Future Sanitation disputes that it lacked the creditworthiness to obtain the bonds, (Evergreen Indemnity's First Reply and Opp'n 4 n.4), and characterizes the events much differently than Evergreen Indemnity and Sternberg. According to Future Sanitation, Aloia did not initially know that Sternberg agreed to guarantee Future Sanitation's bonds and alleges that Sternberg and Evergreen Indemnity conspired against Future Sanitation so that Sternberg could take over the company. (Br. Future Sanitation's Mot. 2.) Future Sanitation claims that Sternberg demanded that Future Sanitation pay him $200,000 to drop a lawsuit against a municipality or else he would have Evergreen Indemnity pull Future Sanitation's bonds. (Am. Compl. ¶¶ 13–14, 21–23; Br. Future Sanitation's Mot. 2–3.) Although the parties do not dispute that Sternberg presented a Stock Purchase Agreement to Aloia proposing to purchase majority ownership of Future Sanitation in August 2014, (Br. Future Sanitation's Mot. 3; Sternberg's Answer to Am. Compl.

¶ 31), Future Sanitation asserts that Sternberg sought to destroy Future Sanitation by pulling

Evergreen Indemnity's bonding after Aloia refused his takeover attempt, (Br. Future Sanitation's

Mot. 3–4).

As for the Promissory Notes, Future Sanitation does not dispute the terms of those Notes

or that it, through Aloia, signed the Notes, but denies Sternberg paid it the stated amounts. (RSSUF

¶¶ 2, 8–9.)

## II.    PARTIES' CLAIMS

### A.    Future Sanitation's Claims

Future Sanitation alleges the following counts:

1.    Evergreen Indemnity breached its contractual obligation to provide bonds through the life of ten of its municipal contracts. (Am. Compl. ¶¶ 93–98.)

2.    If Future Sanitation is not a party to the consents of surety, then Evergreen Indemnity violated Future Sanitation's third-party beneficiary rights under Evergreen Indemnity's contracts with the municipalities. (*Id.* ¶¶ 100–03.)

3.    Evergreen Indemnity breached the covenant of good faith and fair dealing implied in the consents to surety and the General Indemnity Agreement by arbitrarily declining to issue the required performance bonds. (*Id.* ¶¶ 105–10.)

4.    Evergreen Indemnity defrauded Future Sanitation by not disclosing it would require Sternberg's approval before issuing the required bonds. (*Id.* ¶¶ 112–21.)

5.    Evergreen Indemnity misrepresented that it would provide the required bonds because it would only do so with Sternberg's approval. (*Id.* ¶¶ 123–28.)

6.    Sternberg tortiously interfered with Future Sanitation's contracts with Evergreen Indemnity by instructing it not to issue the bonds. (*Id.* ¶¶ 130–35.)

7.    Evergreen Indemnity and Sternberg conspired to extort money from Future Sanitation and control its operations. (*Id.* ¶¶ 141–44.)

In its First Motion, Evergreen Indemnity seeks summary judgment on all of Future

Sanitation's claims against it. (Br. Evergreen Indemnity's First Mot. 20, 38.) Future Sanitation

cross-moves for summary judgment on its breach of contract claim against Evergreen Indemnity

(Count I). (Br. Future Sanitation's Mot. 29.) In its Second Motion, Evergreen Indemnity moves

9

for summary judgment on Future Sanitation's claims for damages or, alternatively, to bar Future Sanitation's expert's testimony and report on damages and proximate cause. (Br. Evergreen Indemnity's Second Mot. 1, 13–16, 20–21, 29, ECF No. 47-8). Sternberg seeks summary judgment on Counts Six and Seven. (Br. Sternberg's Mot. 14–16, ECF No. 48-1.)

## B. Evergreen Indemnity's Counter- and Cross-claims

Evergreen Indemnity asserted a single counter- and cross-claim against Future Sanitation and Sternberg. It submits that, if it is liable, Evergreen Indemnity is entitled to recover from Future Sanitation and Sternberg under the General Indemnity Agreement. (Evergreen Indemnity's Counterclaim and Crossclaim ¶ 13, ECF No. 13.)

## C. Sternberg's Counterclaims and Third-Party Complaint

In his six-count Counterclaim and Third-Party Complaint, Sternberg alleges the following counts:

1.  Future Sanitation breached and owes the First Note. (Sternberg's Counterclaim and Third-Party Complaint ¶¶ 24–28, ECF No. 17.)

2.  Aloia breached his personal guaranty of the First Note by not paying it. (*Id.* ¶¶ 29–36.)

3.  Future Sanitation breached and owes the Second Note. (*Id.* ¶¶ 36–40.)

4.  Future Sanitation was unjustly enriched by not paying on the promissory notes. (*Id.* ¶¶ 41–44.)

5.  Aloia was unjustly enriched by not paying on the First Note pursuant to the personal guaranty. (*Id.* ¶¶ 45–48.)

6.  Finally, Sternberg seeks an accounting of Future Sanitation's assets and liabilities. (*Id.* ¶¶ 49–51.)

In his Motion, Sternberg seeks summary judgment on Counts One, Two, and Three. (Br. Sternberg's Mot. 4.) Sternberg seeks the $752,249 Future Sanitation admitted was owed, plus attorneys' fees and 14% interest accrued per year (as stated in the Second Note) from the date of maturity. (Br. Sternberg's Mot. 25; Sternberg's Proposed Order, ECF No. 48-3.)

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002)). "While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 250) (alteration in original). "Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be no genuine [dispute] of material fact . . . .'" *Id.* (quoting *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)).

"The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468 (D.N.J. 2002). "When ruling on cross-motions for summary judgment, the court must consider the motions independently and view the evidence on each motion in the light most favorable to the party opposing the motion." *Id.* at 468–69 (internal citations omitted). "That one of the cross-motions is denied does not imply that the other must be granted." *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 85 F. Supp. 3d 785, 794 (D.N.J. 2015); *accord F.A.R. Liquidating Corp. v. Brownell*, 209 F.2d 375, 380 (3d Cir. 1954).

## IV.    DISCUSSION

### A.    Counts One and Two of Future Sanitation's Amended Complaint – Breach of Contract against Evergreen Indemnity

The core of the dispute between Evergreen Indemnity and Future Sanitation comes down to whether Evergreen Indemnity was contractually, or otherwise legally, obligated to provide bonds securing Future Sanitation's performance for each year of the multi-year municipal waste collection contracts. (Br. Evergreen Indemnity's First Mot. 20–29; Br. Future Sanitation's Mot. 11–17, 23.) Evergreen Indemnity argues Section V.A. of the General Indemnity Agreement expressly authorized it to decline to issue a bond and that it retained the discretion to cancel the bond after the municipality's acceptance of the bid. (Br. Evergreen Indemnity's First Mot. 34–35.) Evergreen Indemnity submits that general indemnity agreements are common between sureties and contractors and that those agreements should be enforced according to their terms. (*Id.*) Evergreen Indemnity also contends that the statutes and regulations governing municipal solid waste collection contracts and bonding on such contracts do not impose an obligation of a surety to renew its bonds for multi-year contracts. (*Id.* at 21–28.) Evergreen Indemnity notes that the language in the bonds themselves reflect that renewal is not required. (*Id.* at 28–29.)

Future Sanitation argues that its bid requests constituted offers and that the bid specifications, bonds, and regulations explicitly require the surety to provide bonding for each year of the contracts. (Br. Future Sanitation's Mot. 13–15.) Future Sanitation asserts that the bonds' language ("[t]his bond may be extended for additional terms at the option of [Evergreen Indemnity], by Continuation Certificate executed by [Evergreen Indemnity]") means that Evergreen Indemnity could choose between issuing a new bond or extending the term of the one set to expire—not that Evergreen Indemnity had the option of not bonding Future Sanitation at all. (*Id.* at 15–16.) As for the General Indemnity Agreement, Future Sanitation argues that the statutes and regulations require Evergreen Indemnity to provide bonds for each year of the municipal contracts, so Section V.A., which authorizes it not to renew the bonds, is "deleted" pursuant to Section VII.D. (*Id.* at 20.)

First, the Court addresses whether Section V.A. of the General Indemnity Agreement—the provision permitting Evergreen Indemnity the option of renewing the performance bond—is contrary to the applicable statutes and regulations and therefore "deleted" from the contract pursuant to Section VII.D. Section 40A:11-22(b) of the New Jersey Statutes Annotated states:

> [E]very [municipality] shall require from any bidder submitting a bid in accordance with plans, specifications and advertisements, as provided for by law, a certificate from a surety company stating that it will provide the contractor with a bond in such sum as is required in the advertisement or in the specifications.
>
> This certificate shall be obtained for a bond—
>
> . . . .
>
> (3) In such other form as may be provided in the notice to bidders or in the specifications.

Subchapter 6 of New Jersey's Solid Waste Utility Regulations "establish[es] uniform bidding practices for municipal solid waste collection contracts in order to promote competition among

solid waste collectors, [to] protect the interests of consumers[,] and to enhance the Department's

ability to adequately supervise the existence of effective competition." N.J. Admin. Code

§ 7:26H-6.1. Section 7:26H-6.9(b) of the New Jersey Administrative Code provides:

> For a multi-year collection contract, the successful bidder shall
> submit performance bonds in conformance with the following:
>
> 1. The successful bidder shall provide . . . a performance bond issued
> by a Surety in an amount equal to no more than 100 percent of the
> annual value of the contract . . . . The "annual value of the contract"
> shall be included in the notice of award to the bidder and shall be
> equal to the total bid price for each year of the contract. The
> contractor shall provide a one year performance bond for each
> succeeding year of the contract in an amount equal to no more than
> 100 percent of the annual value of the contract for each succeeding
> year. . . . ;
>
> . . .
>
> 3. Failure to deliver a performance bond for any year of the contract
> a minimum of 120 days prior to the termination of the current bond
> will constitute a breach of the contract and shall entitle the governing
> body to terminate the contract upon the expiration of the current
> bond.

When section 7:26H-6.9 was proposed, the DEP explained that the regulation "establishes

the performance bond requirements for solid waste collection contracts" and that, to promote

competition, the regulation would "limit the duration of performance bonds to one year." 28 N.J.

Reg. 82 (Jan. 2, 1996). The DEP received a comment that the annual performance bond

requirement was unnecessary and even harmful because one-year bonds are insufficient to protect

a municipality[3] on a multi-year contract. 28 N.J. Reg. 2925 (June 3, 1996). In response, the DEP

explained that requiring bonds for the entire contract term precludes many waste collectors who

either cannot afford the bond or are unable to secure a guarantee for the life of the contract. *Id.* It

---

[3] The DEP uses the term "contracting unit," but for ease of reference the Court uses "municipality."

14

further stated that "[t]he requirement to provide the performance bond in each succeeding year of a multi-year contract by no later than 120 days prior to the termination of the current bond provides sufficient protect[ion] [for] the municipality." *Id.* at 2926. In particular, "[t]he 120[-]day time frame was selected because it allows the municipality, in the event of a failure to deliver the performance bond, sufficient time to re-bid the contract." *Id.*

By the plain language of the statute, the surety that provides the initial bond is not required to provide bonds for each year of the municipal contract. As Future Sanitation itself quotes, (Br. Future Sanitation's Mot. 11), section 40A:11-22 of the New Jersey Statutes Annotated simply requires "a certificate from a surety company stating that it will provide the contractor with a bond in such sum as is required in the advertisement or in the specifications." The Specifications explicitly require bidders to submit "a performance bond issued by a Surety in an amount equal to no more than 100 percent of the annual value of the contract." N.J. Admin. Code § 7:26H-6.9(b)(1). As the regulation's history reveals, not only is a surety not required to provide bonds for the entire life of a contract, but a contractor cannot submit a bond for more than the annual value of the contract term. *See* 28 N.J. Reg. 82. It would defy the plain language of the statute to read the regulations as requiring a surety to renew its bonds through the life of a waste collection contract. Section V.A. of the General Indemnity Agreement, therefore, is not deleted from the General Indemnity Agreement as contrary to the statutes and regulations.

The Court next addresses the argument that the terms of the contract control the outcome. Under New Jersey law, where the terms of a contract are clear and unambiguous, the moving party is entitled to summary judgment. *Newport Assocs. Dev. Co. v. Travelers Indem. Co. of Ill.*, 162 F.3d 789, 791–92 (3d Cir. 1998). Whether a contract is ambiguous is a question of law. *Nester v. O'Donnell*, 693 A.2d 1214, 1220 (N.J. Super. Ct. App. Div. 1997). "[W]hen the intent of the parties

is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." *Quinn v. Quinn*, 137 A.2d 423, 429 (2016).

Looking to the constellation of documents Future Sanitation relies upon here, the Court finds no obligation for Evergreen Indemnity to renew its bonds. Future Sanitation cites Paragraph 4.4 of the bid specifications, but that paragraph mirrors the language of the regulation. (*See, e.g.*, Diehl Decl. Ex. 18, at 15, ECF No. 46-24.) Specifically, Paragraph 4.4(C) states that for multi-year contracts, "the successful bidder shall provide a performance bond issued by a Surety in an amount equal to no more than 100% of the annual value of the contract." (*Id.*) Moreover, Paragraph 4.4(D) only states that "[f]ailure to deliver a performance bond for any year of a multi-year, contract [120] days prior to the termination of the current bond will constitute a breach of contract and will entitle the [municipality] to terminate the contract upon expiration of the current bond." (*Id.*) With some variation, all of bids at issue have substantively the same, if not identical, language. (*See* Diehl Decl. Ex. 8, at IB-5–6, ECF No. 46-14; Diehl Decl. Ex. 18, at 15; Diehl Decl. Ex. 41, at 4, ECF No. 46-47; Diehl Decl. Ex. 50, at 10–11, ECF No. 46-56.) The bid specifications do not obligate a surety to continually renew performance bonds for the life of the contract.

The consent to surety letters are also unavailing. Three of the letters simply affirm that Evergreen Indemnity "will provide the required Bond or Bonds." (Diehl Decl. Ex. 21, ECF No. 46-27; Diehl Decl. Ex. 31; Diehl Decl. Ex. 44, ECF No. 46-50.) Future Sanitation reads "required" in reference to the entire term of the contract. (*See* Br. Future Sanitation's Mot. 13.) Consent to surety letters, however, are specific requirements in the bidding process. N.J. Admin. Code § 7:26H-6.5(d)(6). The Court, therefore, finds that "required" refers to the bid specification, which calls for one-year bonds. Likewise, the consent to surety letter delivered to Rochelle Park

16

explicitly refers to the bid specifications, which contain no obligation to renew. (Diehl Decl. Ex. 53, ECF No. 46-59.)

The consent to surety letter submitted to the Township of Bloomfield requires a more detailed analysis. It states Evergreen Indemnity "agrees that if the Contract . . . is awarded to Future Sanitation . . . , the undersigned Corporation shall execute the Bond or Bonds required by the Contract Documents and will become Surety in the full amounts set forth in the Contract Documents for the faithful performance of all obligations of the Bidder." (Diehl Decl. Ex. 11.) This language tends to evince a contract for Evergreen Indemnity to provide bonds through the life of the contract. The problem with Future Sanitation's reading, however, is that the regulations specify that a consent to surety in an amount greater than the annual cost of the contract is to be rejected. N.J. Admin. Code § 7:26H-6.9(b)(1). Consequently, the Court cannot read Evergreen Indemnity's letter as accepting to provide bonds for the term of the contract where such a reading would have prevented Future Sanitation from obtaining the contract in the first place. Moreover, Future Sanitation argues the bond request constituted its offer to Evergreen Indemnity, "as set forth in [N.J. Stat. Ann.] § 40A:11-22, to provide Future [Sanitation] with the bonds required by the bid specifications." (Br. Future Sanitation's Mot. 11.) Again, Bloomfield's bid specifications—in accord with the regulations—required a bond for no more than the annual contract value. (Diehl Decl. Ex. 8, at IB-6.) Further, Future Sanitation expressly authorized Evergreen Indemnity to, "at its option and in its sole discretion . . . [d]ecline to Issue any Bond, even when such Bond is required . . . by the terms of a contract for which the Surety executed a Final Bond" in the General Indemnity Agreement. (General Indemnity Agreement § V, Kent Decl. Ex. A, at 22.) Accordingly, the Court finds the Bloomfield consent to surety letter cannot be read out of context and that, like

17

the other letters, it simply acknowledges Evergreen Indemnity's agreement to provide the bonds required to obtain the contract as called for by the bid specification.

Finding no evidence of an obligation, legal or contractual, for Evergreen Indemnity to renew the bonds on Future Sanitation's municipal contracts sufficient to sustain a verdict in favor of Future Sanitation on its breach of contract claims or its alternative third-party benefit claim, the Court grants Evergreen Indemnity's Motion for Summary Judgment on Counts One and Two of Future Sanitation's Amended Complaint and denies Future Sanitation's Motion for Summary Judgment on Count One.

### B.    Count Three of Future Sanitation's Amended Complaint – Breach of Duty of Good Faith and Fair Dealing against Evergreen Indemnity

Evergreen Indemnity contends Future Sanitation's claims for breach of the implied covenant of good faith and fair dealing, fraud, misrepresentation, and conspiracy fail as a matter of law because: (1) the General Indemnity Agreement expressly authorized Evergreen Indemnity to decline to issue bond renewals; (2) Future Sanitation was aware of and participated in Evergreen Indemnity's practice of confirming Sternberg's approval before renewing the bonds; and (3) Evergreen Indemnity's decision to decline Future Sanitation's bond renewal was consistent with its contractual rights and the parties' dealings. (Br. Evergreen Indemnity's First Mot. 38.)

Future Sanitation again argues that Section VII.D. of the General Indemnity Agreement deletes the portion of the Agreement permitting Evergreen Indemnity to not provide renewal bonds. (Br. Future Sanitation's Mot. 20–21.) Future Sanitation also disputes that it was initially aware Sternberg was in control of the bonding and states it never acquiesced to the cancelling of executory contracts. (*Id.* at 22.) With respect to its claim of breach of the covenant of good faith and fair dealing, Future Sanitation argues there is evidence of bad faith because Evergreen Indemnity conspired with Sternberg to help him take over Future Sanitation and that Evergreen

Indemnity "simply followed the directions of Sternberg, who was actually supposed to be guaranteeing Future[ Sanitation's] work instead of controlling Future[ Sanitation's] bonding." (*Id.* at 22.)

"The implied covenant of good faith and fair dealing exists in every contract under New Jersey Law." *Cargill Glob. Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 579 (D.N.J. 2010) (citing *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 224 (2005)). "[E]vasions and subterfuges on the part of the defendant can suffice to establish a violation of the implied covenant of good faith and fair dealing . . . ." *Id.* at 580. There must be a "'demonstrable course of conduct, a series of evasions and delays, that lulled plaintiff into believing' that it would get the benefit of the bargain." *Id.* (quoting *Brunswick Hills Racquet Club, Inc.*, 182 N.J. at 231). Without an express or implied contract, there can be no breach of the covenant. *Wade v. Kessler Inst.*, 798 A.2d 1251, 1262 (N.J. 2002). Further, when "a defendant acts in accordance with an express contractual term, he [or she] cannot be liable for breach of the implied covenant." *Cargill Glob. Trading*, 706 F. Supp. 2d at 580.

As discussed above, Future Sanitation has failed to demonstrate any contractual or legal obligation on Evergreen Indemnity's part to renew its bonds. Assuming each one-year bond constituted a contract between Future Sanitation and Evergreen Indemnity, any such bargain would not have encompassed renewal through the municipal contracts' terms. In addition, the General Indemnity Agreement and the bonds themselves expressly authorized Evergreen Indemnity to not renew the bonds. (Kent Decl. Ex. A, at 21; EFSUF ¶ 18; REFSUF ¶ 18; *see, e.g.*, Diehl Decl. Ex. 13, at 1, ECF No. 46-19 (Bloomfield Performance Bond).) Evergreen Indemnity cannot breach the covenant of good faith or fair dealing, then, where it was expressly authorized—"in its sole discretion"—to not renew the bonds. (Kent Decl. Ex. A, at 21; *see Cargill Glob. Trading*, 706

F. Supp. 2d at 580.) Because Future Sanitation's breach of the covenant of good faith and fair dealing claim must fail as a matter of law, the Court grants summary judgment to Evergreen Indemnity on Count Three of Future Sanitation's Amended Complaint.

## C. Counts Four and Five of Future Sanitation's Amended Complaint – Fraud and Misrepresentation against Evergreen Indemnity

Future Sanitation argues that there is evidence of misrepresentation and fraud because Sternberg, as Evergreen Indemnity's agent, never disclosed his intent to take over Future Sanitation when he approached Future Sanitation to help it secure municipal bonds. (Br. Future Sanitation's Mot. 22.)

"Negligent misrepresentation is . . . [a]n incorrect statement, negligently made and justifiably relied upon . . . ." *H. Rosenblum, Inc. v. Adler*, 461 A.2d 138, 142–43 (N.J. 1983). The elements of fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). "The actual receipt and consideration of any misstatement remains central to the case of any plaintiff seeking to prove that he or she was deceived by the misstatement or omission." *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1195 (N.J. 2000). "Because negligent misrepresentation does not require scienter as an element, it is easier to prove than fraud." *Id.* at 1196.

Future Sanitation imputes Sternberg's alleged intentions to Evergreen Indemnity, averring Sternberg was an agent of Evergreen Indemnity. (Br. Future Sanitation's Mot. 22.) Future Sanitation has produced no evidence to establish such an agency relationship, however, and that characterization would contradict the express terms of the General Indemnity Agreement, which classified Sternberg as an indemnitor of Evergreen Indemnity. (EFSUF ¶ 6; REFSUF ¶ 6.) Because

there is no dispute of material fact that would allow imputation of Sternberg's alleged intentions to Evergreen Indemnity, Future Sanitation's fraud claim is deficient as a matter of law because Future Sanitation fails to show scienter as to Evergreen Indemnity. *See Gennari*, 691 A.2d at 367.

Even assuming Sternberg's alleged failure to tell Future Sanitation about his intent to take over the company could be imputed to Evergreen Indemnity, Future Sanitation's negligent misrepresentation and fraud claims must fail because Future Sanitation fails to provide sufficient evidence such that a reasonable jury could find Future Sanitation's reliance on Sternberg's or Evergreen Indemnity's alleged failure to disclose Sternberg's intent reasonable. The General Indemnity Agreement expressly authorized Evergreen Indemnity in its discretion to decline to renew Future Sanitation's bonds, so any reliance on Evergreen Indemnity renewing the bonds would contradict Evergreen Indemnity's express contractual rights.

Future Sanitation also cannot demonstrate that it relied on Sternberg's failure to disclose his intent to take over the company. Whether Future Sanitation knew or not about Sternberg's intent to try to use Evergreen Indemnity's bonds to pressure Aloia into selling a majority of the company to him would not have affected Future Sanitation's position. Had Future Sanitation known of Sternberg's intent, it either could have accepted the arrangement and Evergreen Indemnity's bonds or sought out another bonding company. As Future Sanitation admits, once Evergreen Indemnity decided not to renew its bonds, Future Sanitation sought another bonding company, albeit unsuccessfully. (EFSUF ¶¶ 34, 36; REFSUF ¶¶ 34, 36; *see also* Kent Decl. Ex. D, at Ex. A1; Kent Decl. Ex. N, at Ex. 2–8.) Had Future Sanitation been aware of Sternberg's intent, Future Sanitation's position would not have materially changed. It would have been forced to seek another bonding company, which is exactly what Future Sanitation had the opportunity to

do once Evergreen Indemnity decided not to renew its bonds. Future Sanitation's proofs fail to establish reliance on its lack of knowledge of Sternberg's alleged plan.[4]

Because Future Sanitation has failed to produce evidence that would enable it to prove the elements of negligent misrepresentation or fraud, the Court must grant summary judgment to Evergreen Indemnity on Counts Four and Five of Future Sanitation's Amended Complaint.

**D.      Count Seven of Future Sanitation's Amended Complaint – Conspiracy against Evergreen and Sternberg**

"The necessary elements of a civil conspiracy are: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or a lawful purpose to be achieved by unlawful means; and (4) special damages." *John Wiley & Sons, Inc. v. Rivadeneyra*, 179 F. Supp. 3d 407, 412 (D.N.J. 2016). "[T]he principal element . . . is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005).

Evergreen Indemnity argues that there are no facts to support an "underlying wrong." (Br. Evergreen Indemnity's First Mot. 39.) Evergreen Indemnity stresses that it was authorized to decline to renew Future Sanitation's bonds and that it was unaware of any untoward conduct by Sternberg. (*Id.* at 6, 39.) Evergreen Indemnity contends that Future Sanitation's conspiracy claim is based on generalized and unsupported allegations against Sternberg, and that these conclusory affidavits and vague statements are insufficient to withstand summary judgment. (*See id.* at 39.) In his Motion, Sternberg adopts Evergreen Indemnity's arguments. (Br. Sternberg's Mot. 15.)

---

[4] Because the Court finds Future Sanitation cannot prove the scienter element of fraud or the reliance element of fraud or negligent misrepresentation, the Court does not address the other elements of either claim.

Future Sanitation argues that there is evidence of a conspiracy because Evergreen Indemnity employees testified that they gave control of Future Sanitation's bonding to Sternberg. (Br. Future Sanitation's Mot. at 23.) Future Sanitation contends that Evergreen Indemnity and Sternberg's fraud was perpetrated so Sternberg could "strong-arm" Future Sanitation. (Br. in Opp'n to Sternberg's Mot. 16, ECF No. 49.) Future Sanitation contends there is "evidence [that] demonstrates that Sternberg threatened Future Sanitation with his control over the bonding." (*Id.*) In its Amended Complaint, Future Sanitation points to three alleged wrongs as the premise for its claim: (1) Sternberg and Evergreen Indemnity acted in concert to extort money from Future Sanitation; (2) Sternberg and Evergreen Indemnity breached the implied covenant of good faith and fair dealing; and (3) Evergreen Indemnity failed to issue, and Sternberg failed to authorize, the issuance of performance bonds. (Am. Compl. ¶¶ 142–44.)

Again, as explained above, Future Sanitation cannot demonstrate a breach of the covenant or breach of an obligation to provide the performance bonds, so to the extent the conspiracy claim is contingent on those allegations, an unlawful purpose or unlawful means is unprovable. As to its allegations of extortion, Future Sanitation has failed to produce evidence beyond vague and general assertions that Sternberg used his position to take advantage of Future Sanitation. The only evidence of the alleged extortion brought to the Court's attention is a general allegation in Aloia's declaration that, "[b]acked by his threats, Sternberg took money from Future [Sanitation] and directed Future[ Sanitation's] operations in ways that damaged [it]." (Aloia Decl. ¶ 5, ECF No. 46-2.) The Court, accordingly, does not find sufficient evidence to raise a triable dispute of material fact as to the allegations of extortion in the Amended Complaint. *See Read*, 397 F. Supp. 3d at 625 ("Unsupported allegations . . . cannot forestall summary judgment."). The Court, therefore, grants summary judgment in favor of Evergreen Indemnity and Sternberg as to Count Seven.

### E.    Evergreen Indemnity's Second Motion

Evergreen Indemnity raises four main points in its Second Motion: (1) assuming Evergreen Indemnity is contractually obligated to renew the bonds, damages are not a foreseeable result of Evergreen Indemnity's breach of contract; (2) summary judgment is appropriate for damages related to the five municipal contracts; (3) Future Sanitation's expert report is inadmissible; and (4) the expert's valuation is inadmissible. (Br. Evergreen Indemnity's Second Mot. 13–21, 29, ECF No. 47-8.) Because the Court grants summary judgment to Evergreen Indemnity on Future Sanitation's breach of contract claims, the first and second arguments on damages and proximate cause are moot. Evergreen Indemnity's third and fourth points are also moot because Future Sanitation has decided to withdraw its expert and expert report. (Future Sanitation's Opp'n to Evergreen Indemnity's Second Mot. 18, ECF No. 51.)

### F.    Count Six of Future Sanitation's Amended Complaint – Tortious Interference Against Sternberg

Sternberg moves for summary judgment on Count Six of Future Sanitation's Amended Complaint. (Br. Sternberg's Mot. 14.) He argues that Future Sanitation has not established a breach of contract, which is necessary to prove tortious interference. (*Id.* at 14–15.)

"To establish [tortious interference with a contract], a plaintiff must prove: (1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference." *DiGiorgio Corp. v. Mendez & Co.*, 230 F. Supp. 2d 552, 558 (D.N.J. 2002).

Future Sanitation alleges tortious interference with the contracts to provide bonds for each year of the municipal contracts. (Am. Compl. ¶ 134; Br. in Opp'n to Sternberg's Mot. 10–15.) As explained above, Evergreen Indemnity is not contractually obligated to renew its bonds, and New Jersey law does not create such an obligation. Because Future Sanitation is unable to establish such

an obligation exists from the undisputed facts of this case, the Court grants summary judgment to Sternberg on Count Six of Future Sanitation's Amended Complaint.

### G. Counts One, Two, and Three of Sternberg's Counterclaims and Third-Party Complaint – Breach of the First and Second Promissory Notes Against Future Sanitation and Aloia

Sternberg argues that, because there is no dispute that Aloia signed the Promissory Notes and personal guarantee, and because there is no dispute over the terms of those agreements, the agreements should be enforced according to their terms. (Br. Sternberg's Mot. 16–17.) Sternberg contends, that "summary judgment is appropriate when the debtor ·has conceded that he signed the note, received the money, and acknowledged that he is liable for repayment.'" (*Id.* at 18 (quoting *Kurz-Kasch, Inc. v. Holtzberg*, No. 05-519, 2006 WL 561918, at *3 (D.N.J. Mar. 7, 2006)).) To demonstrate Future Sanitation received the money, Sternberg cites to deposition testimony that Sternberg was a creditor of Future Sanitation and deposition testimony of Aloia in which Aloia testified that he did owe money to Sternberg, but less than the amounts stated in the First Note. (*Id.* at 19 (citing Weinreich Decl. Ex. D, Dep. of Aloia at 174:10–25, ECF No. 48-8).) Sternberg also points to a September 23, 2015 letter from Future Sanitation's attorney to the Enforcement Section of the Environmental Practice Group of the New Jersey Department of Law and Public Safety, Division of Law, which identified Sternberg as "a new Debt Holder" and "the loan amount" as \$752,249. (*Id.* at 20 (citing Weinreich Decl. Ex. J, ECF No. 48-14).) Sternberg contends that the letter contained an "admission of liability [that] precludes Future[ Sanitation's] assertion of any defense inconsistent with the admission." (*Id.* at 21.)

Future Sanitation responds that summary judgment is inappropriate for four reasons. First, Future Sanitation contends that the Notes were executed after Sternberg offered Future Sanitation the Stock Purchase Agreement and were therefore part of his effort to acquire the company. (Br. in Opp'n to Sternberg's Mot. 18.) According to Future Sanitation, approval by the Board of Public

Utilities ("Board") is required before someone may acquire a public utility. (*Id.* at 17–18); *see* N.J. Stat. Ann. § 48:2-51.1. Because Future Sanitation is a public utility under section 48:2-13 of the New Jersey Statutes Annotated, Future Sanitation reasons that the Notes are void due to Sternberg's failure to obtain approval from the Board. (*Id.*) Second, Future Sanitation argues the Notes are similarly void under section 48:3-9 because they were payable more than twelve months after their issue date, and Sternberg did not obtain Board approval under the statute. (*Id.* at 18–19.) Third, Future Sanitation submits the Notes are also void under section 48:3-7 because Sternberg did not obtain Board approval before encumbering Future Sanitation's property. (*Id.* at 19–20.) Lastly, Future Sanitation claims "Sternberg failed to pay Future [Sanitation] the values stated in the notes." (*Id.* at 17.)

Sternberg responds that each of Future Sanitation's arguments are baseless. First, he notes that section 48:3-9 does not apply to solid waste collectors and that Future Sanitation conceded it "was a solid waste collection company." (Sternberg Reply 7, ECF No. 55 (quoting Br. in Opp'n to Sternberg's Mot. 17).) Second, Sternberg points out that section 48:3-7(a) states any "encumbrance" would be void. (*Id.* at 7–8.) Sternberg submits that, even if the Notes "encumbered" Future Sanitation's property, the encumbrance—not the debt—would be void. (*Id.* at 8–9.) Third, Sternberg contends the Notes are completely separate from the Stock Purchase Agreement, which Aloia did not sign, and that Future Sanitation has failed to produce any evidence that he and Evergreen Indemnity were part of a takeover scheme. (*Id.* at 10–11.) Fourth, Sternberg stresses that Future Sanitation summarily alleged it was not paid the value of the Notes, but that Future Sanitation admitted to the State of New Jersey that it owed \$752,249 to Sternberg as of September 23, 2015. (*Id.* at 2 n.1.)

Section 48:2-51.1 of the New Jersey Statutes Annotated states:

> [N]o person shall acquire or seek to acquire control of a public utility directly or indirectly . . . through the purchase of shares, . . . or through any other manner, without requesting and receiving the written approval of the Board of Public Utilities. Any agreement reached, or any other action taken, in violation of this act shall be void.

The Court need not look beyond the plain language of the statute. The Notes would not have given Sternberg control of Future Sanitation or rights over Future Sanitation beyond that of any other creditor, and the statute does not speak to ordinary debts. The statute does not support Future Sanitation's theory. As Sternberg contends, section 48:3-9(a)(2) of the New Jersey Statutes Annotated explicitly states that "[t]he provisions of this subsection shall not apply to any solid waste collector." That the Notes were payable twelve months after they were issued does not render them unenforceable.

Under New Jersey's canons of statutory construction, "[t]he Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." *DiProspero v. Penn*, 874 A.2d 1039, 1048 (N.J. 2005) (citation omitted). "[C]ourts must make every effort . . . to avoid rendering any part of the statute superfluous." *State v. Twiggs*, 187 A.3d 123, 134 (N.J. 2018) (internal quotation marks and citation omitted). Additionally, "[i]nterpretations that lead to absurd or futile results are to be avoided." *Perez v. Zagami, LLC*, 94 A.3d 869, 876 (N.J. 2014). Section 48:3-7(a) of the New Jersey Statutes Annotated provides:

> [A] public utility shall not, without the approval of the board, sell, lease, mortgage, or otherwise dispose of or encumber its property, franchises, privileges, or rights, or any part thereof . . . .
>
> . . . .
>
> A sale, mortgage, lease, disposition, encumbrance, merger, or consolidation made in violation of this section shall be void.

An encumbrance is "[a] claim or liability that is attached to property or some other right and that may lessen its value, such as a lien or mortgage; any property right that is not an ownership interest." *Encumbrance*, BLACK'S LAW DICTIONARY (11th ed. 2019).

By its terms, the Second Note does not "encumber" Future Sanitation's property. (*See* Weinreich Decl. Ex. E, at 1–5, ECF No. 48-9.) Because the Second Note does not touch Future Sanitation's property, the statute is inapplicable. The First Note, which contains Aloia's personal guarantee, "grants to the Payee a lien on and a security interest in all goods, inventory, equipment, fixtures, accounts, general intangibles, documents, instruments, and chattel paper of the Maker now or hereafter acquired." (Weinreich Decl. Ex. C, at 1, ECF No. 48-7.) That security interest and lien may be void under the statute. Nevertheless, that does not mean the Note itself is rendered unenforceable. The plain language of the statute specifies that an "encumbrance . . . made in violation of this section shall be void." N.J. Stat. Ann. § 48:3-7(a). It does not void, or make illegal, the repayment obligation. Finally, the Court finds no support for Future Sanitation's argument that all debts encumber property and are void under the statute without Board approval.

Future Sanitation's remaining defense to the enforcement of the Notes is that it never received the value stated in each Note. (Br. in Opp'n to Sternberg's Mot. 17.) To rebut Sternberg's evidence that Future Sanitation informed the State of New Jersey that it owed him $752,249, Future Sanitation simply states that the Notes speak for themselves, but that they are

unenforceable. (SSUF ¶ 25; RSSUF ¶ 25.) Because Future Sanitation does not contest that it has not paid and still owes Sternberg $752,249, the Court considers those facts to be undisputed.

The question, then, is whether Future Sanitation's general, unspecific statement that it did not receive the value stated in the Notes creates a material dispute of fact. On summary judgment, once the moving party meets its burden, "the non-moving party must 'do more than simply show that there is some metaphysical doubt as to material facts.'" *United States v. Considine*, No. 06-6118, 2008 WL 4723030, at *1 (D.N.J. Oct. 24, 2008) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmovant "must set forth specific facts showing a genuine [dispute] for trial and may not rest upon mere allegations, general denials, or . . . vague statements." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991).

While not contesting the terms of the Notes, the personal guarantee, or that it owed and failed to repay the $752,249, Future Sanitation devotes one line in its brief to state it did not receive the amounts listed on the face of the Notes. Future Sanitation's general, unspecific denial, which mirrors the language in its Answer, is not enough to raise a triable dispute of fact. The Court, accordingly, grants Sternberg's Motion for Summary Judgment as to Counts One, Two, and Three of his Counterclaim and Third-Party Complaint.

## V. CONCLUSION

For the reasons stated above, Evergreen Indemnity's First Motion is granted as to Counts One, Two, Three, Four, Five, and Seven of Future Sanitation's Amended Complaint. Evergreen Indemnity's Second Motion is denied as moot. Future Sanitation's Motion is denied. And Sternberg's Motion is granted as to Count Six and Seven of Future Sanitation's Amended

Complaint and granted as to Counts One, Two, and Three of Sternberg's Counterclaims and Third-Party Complaint. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: November 30, 2019